UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------x
                                    :

UMG RECORDINGS, INC., *et al.*,

                  Plaintiffs,           :        11 Civ. 8407 (TPG)

                  v.              :          ECF CASE

ESCAPE MEDIA GROUP, INC., *et al.*,    :    **OPINION AND ORDER**

                  Defendants.      :

-------------------------------------------x

      In a September 29, 2014 decision ("the SJ Decision"), the court granted summary judgment to plaintiffs in this copyright infringement action. A jury trial on statutory damages is scheduled to begin April 27, 2015.

      Before the court are five motions *in limine* filed by plaintiffs, and three motions *in limine* filed by defendants. The court addresses some, but not all, aspects of the pending motions in this decision.

      For the reasons that follow, the motion *in limine* pending at Docket No. 155 is granted. The motions *in limine* pending at Docket Nos. 121, 124, and 135 are granted in part. The motions *in limine* pending at Docket Nos. 141 and 145 are denied. The court reserves judgment on the motions *in limine* pending at Docket Nos. 127 and 143.

## BACKGROUND

      The court assumes the parties' familiarity with the facts of the case, and with the record supporting the court's ruling at summary judgment. The court briefly recapitulates those facts

here for purposes of resolving the pending motions *in limine*.

In the SJ Decision, the court first noted that the claims at issue relate only to certain copyrighted sound recordings (the "Works in Suit") uploaded by Escape Media Group, Inc. ("Escape") employees to a music streaming service called "Grooveshark," but do not implicate "infringement by users of the Grooveshark service in general." (SJ Decision at 15.) The court also rejected defendants' affirmative defenses of statute of limitation, laches, estoppel and waiver based on the timing of this action's commencement, holding that "plaintiffs promptly filed suit [in November 2011] against defendants three months after learning of the employee uploads" through discovery in a related action in state court. (*Id.* at 39-42.)

The court then granted summary judgment in favor of plaintiffs, finding the defendants liable for copyright infringement with respect to the Works in Suit.   In so ruling, the court found that: (1) Escape was directly liable for the infringing uploads of its employees, because the record included "uncontroverted evidence that defendants instructed their employees to upload copyright protected music onto Grooveshark"; and (2) Escape was secondarily liable for these infringements under theories of vicarious infringement, inducement of infringement, and contributory infringement.  (*Id.* at 47-54.)  The court stated that "by overtly instructing its employees to upload as many files as possible to Grooveshark as a condition of their employment, Escape engaged in purposeful conduct with a manifest intent to foster copyright infringement via the Grooveshark service." (*Id.* at 53.)

The court also found that defendants Tarantino and Greenberg—the co-founders of Grooveshark—were jointly and severally liable for Escape's infringement, and were also liable for direct infringement based on their own infringing uploads. (*Id.* at 54-56.) And, the court sanctioned defendants for willfully deleting relevant upload data and records "in bad faith" and

"with a culpable state of mind," which precluded plaintiffs and the court from determining "the full scope and scale of Escape's piracy campaign." (*Id.* at 25-32.) The court therefore drew an adverse inference against defendants, based on the deleted evidence, that an additional 1,944 sound recordings were infringed.

In advance of trial, the parties have entered into a stipulation identifying 2,963 recordings that are at issue, in addition to 1,944 employee uploads inferred by the court as a result of defendants' spoliation of evidence. There are thus 4,907 specific recordings in the Works in Suit.

## DISCUSSION

### I. Applicable Law

A. Statutory Damages Under the Copyright Act

Plaintiffs have chosen to pursue statutory damages at the upcoming trial. Section 504(c) of the Copyright Act allows a plaintiff to elect to recover statutory damages "instead of actual damages and profits." 17 U.S.C. § 504(c)(1). For each infringed work, "statutory damages may be awarded in the range of $750 to $30,000, but if the copyright owner proves that the infringement was committed willfully, the damages may be enhanced up to $150,000." *HarperCollins Publishers LLC v. Open Rd. Integrated Media, LLP*, No. 11 CIV. 9499 (NRB), 2014 WL 5777929, at *5 (S.D.N.Y. Nov. 6, 2014) (citing 17 U.S.C. §§ 504(c)(1)-(2)). Such damages "serve the dual purpose of compensating the plaintiff for an injury and discouraging a defendant's wrongful conduct." *EMI Apr. Music Inc. v. 4MM Games, LLC*, No. 12 CIV. 2080 (DLC), 2014 WL 325933, at *3 (S.D.N.Y. Jan. 13, 2014), *report and recommendation adopted,* No. 12 CIV. 2080 (DLC), 2014 WL 1383468 (S.D.N.Y. Apr. 7, 2014) (internal citations omitted).

In 2010, the Second Circuit identified six factors to be considered when setting the amount of statutory damages: "(1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties." *Bryant v. Media Right Productions, Inc.*, 603 F.3d 135, 144 (2d Cir. 2010). The Second Circuit has recently reaffirmed this six-factor test. *See Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 126-27 (2d Cir. 2014) (citing *Bryant*, 603 F.3d at 143-44). In so ruling, the Second Circuit added: "Although revenue lost is one factor to consider, we have not held that there must be a direct correlation between statutory damages and actual damages. To suggest otherwise is to ignore the various other factors a court may consider and the purposes of statutory damages in the willful infringement context." *Id.*

B.  Motions *in limine*

"The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria,* 88 F.3d 136, 141 (2d Cir. 1996) (internal quotation marks omitted); *accord Highland Capital Mgmt., L.P., v. Schneider, et al.,* 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008).

"In its role as gatekeeper, this court must balance a number of competing considerations, including relevance, probative value, unfair prejudice and confusion of the issues." *Island Intellectual Prop. LLC v. Deutsche Bank AG*, No. 09 CIV. 2675 (KBF), 2012 WL 526722, at *3 (S.D.N.Y. Feb. 14, 2012) (citing Fed. R. Evid. 401, 402, 403). Additionally, under Federal Rule of Civil Procedure 56(g), a court can determine that certain facts are established and forbid

parties from contesting those facts at trial. *See Berbick v. Precinct 42*, 977 F. Supp. 2d 268, 275 (S.D.N.Y. 2013). However, evidence should not be excluded on a motion *in limine* unless such evidence is "clearly inadmissible on all potential grounds." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Grp.,* 937 F. Supp. 276, 287 (S.D.N.Y. 1996) (citation omitted). A court's ruling on such a motion is "subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in [a party's] proffer." *Luce v. United States,* 469 U.S. 38, 41 (1984).

With the above case law in mind, the court turns to the pending motions.

## II. The Pending Motions *in Limine*

### A. Plaintiffs' Motion *in limine* to Preclude Evidence or Argument Inconsistent with the Court's Summary Judgment Order (Dkt. No. 121)

Plaintiffs move to preclude any evidence or argument inconsistent with the facts established as a matter of law in the SJ Decision. The court grants plaintiffs' motion in part, consistent with the guidance to the parties provided below.

#### i. Defendants' Willful Infringement and Bad Faith

As noted above, the SJ Decision includes a finding that "by overtly instructing its employees to upload as many files as possible to Grooveshark as a condition of their employment, Escape engaged in purposeful conduct with a manifest intent to foster copyright infringement via the Grooveshark service." (*Id.* at 53.) The SJ Decision includes other findings that defendants "actively directed, encouraged, and condoned the company-wide infringement through instructing employees to upload copyrighted sound recordings and through creating a Central Music Library to store and stream copies of plaintiffs' work[,]" and that Escape "knew of and materially contributed to the infringing employee uploads[.]" (*Id.* at 54.) And, the SJ Decision notes that Escape, "in bad faith, deleted Greenberg and other user upload data as well

5

as relevant source code" despite knowing about pending litigation. (*Id.* at 25.)

These findings mean that the SJ Decision established that defendants' conduct was "willful" within the meaning of Section 504(c)(2) of the Copyright Act. *See Bryant*, 603 F.3d at 143 ("A copyright holder seeking to prove that a copier's infringement was willful [under Section 504(c)(2)] must show that the infringer had knowledge that its conduct represented infringement or ... recklessly disregarded the possibility") (internal quotations omitted); *see also Arista Records LLC v. Lime Grp., LLC*, No. 06 Civ. 5936 (KMW), Dkt. 712 (S.D.N.Y. Apr. 25, 2011). These findings also mean that defendants acted "in bad faith."

Defendants concede in their own motion *in limine*, as they must, that they do not intend to re-litigate at trial issues that were conclusively determined in the SJ Decision. (Dkt. 142 at 2.) However, defendants claim that even if the SJ Decision compels the conclusion that the infringements at issue were "willful" or "in bad faith," defendants still may present evidence about the *degree* of willfulness or bad faith involved in the relevant infringements. Plaintiffs agree—as does the court—that "such evidence concerning the degree of willfulness and bad faith is appropriate." (Dkt. No. 173 at 2.)

The court will therefore preclude defendants from offering argument or evidence contesting the court's determination that defendants' conduct was "willful" and "in bad faith," and will instruct the jury that the statutory range per work is capped at $150,000—not $30,000. 17 U.S.C. § 504(c)(1), (2). However, defendants may present proof as to the degree and extent of their willfulness or bad faith.

### ii. Tarantino and Greenberg's Liability for the Infringing Employee Uploads

In the SJ Decision, the court clearly found Tarantino and Greenberg jointly and severally liable for Escape's direct and secondary infringements. (SJ Decision at 54-56.) Given these

findings, defendants' proffered arguments—that "in some instances" recordings were uploaded "without Tarantino's or Greenberg's knowledge of which or how many recordings those employees were uploading to the Grooveshark system," (Dkt. No. 158 at 8), or that "a substantial proportion of any damages to plaintiffs were not caused by any conduct of defendant and should not be attributed to him"—are precluded by the prior rulings of the court, and are not relevant or admissible under Rules 401 and 403.

> ### iii.    Defendants' Infringement In Connection With the Grooveshark Lite Service

The SJ Decision includes a finding that, "[i]n order to launch Grooveshark Lite"—which is the later version of Grooveshark's streaming service that remains available today—Escape copied all of the digital music files located in its library, including "all of the infringing employee uploads" at issue, onto "a new computer dedicated to Grooveshark Lite users." (SJ Decision at 10.) Emphasizing this language from the SJ Decision, plaintiffs seek to preclude defendants from offering evidence or argument that certain infringing conduct occurred in connection with defendants' since-abandoned peer to peer business model, and not the current Grooveshark Lite streaming service.

Plaintiffs ignore, however, other language in the SJ Decision, which noted that the infringing employee uploads also occurred in connection with Grooveshark's earlier peer to peer model. (*Id.* at 6-9.) In fact, plaintiffs' own proposed exhibit list appears to include evidence from this earlier period in Grooveshark's history. At this juncture, the court will allow defendants to present evidence concerning the timing of the uploads at issue, as relevant to the degree of defendants' willfulness. Of course, plaintiffs will be permitted to offer their own proof that, as found in the SJ Decision, "all of the infringing employee uploads" at issue were also included in the content used to launch Grooveshark Lite.

### iv.    Validity of Plaintiffs' Copyrights For Works in Suit
### Recorded Before 1972

"Federal copyright law does not cover sound recordings made prior to 1972." *Arista*

*Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 436 (S.D.N.Y. 2011). Rather, "these

recordings are protected by state common law on copyright infringement." *Id.* (citing 17 U.S.C.

§ 301(c); *Capitol Records, Inc. v. Naxos of America, Inc.,* 830 N.E.2d 250, 263–64 (N.Y. 2005)).

In the SJ Decision, the court found it was "undisputed that plaintiffs own the copyrights

to the subject sound recordings," that defendants had "not challenged the validity of plaintiffs'

copyrights," and that "plaintiffs did not approve of the reproduction, distribution, and public

performance of the works in the suit." (SJ Decision at 43.)  Plaintiffs claim that, despite this

ruling, defendants will seek at trial to challenge the validity of plaintiffs' copyrights for a subset

of the Works in Suit that were recorded before 1972, but re-mastered after 1972—with copyright

registration dates after 1972.  Plaintiffs claim that works recorded before 1972 but re-mastered

after 1972 may be the subject of a statutory damages award. (Dkt. No. 122 at 14 (citing *Pryor v.

Jean*, No. 13 CIV 02867 DDP (AJW), 2014 WL 5023088, *4 (C.D. Cal. Oct. 8, 2014).)

Additionally, plaintiffs claim that by failing to challenge the validity of plaintiffs' copyrights at

summary judgment, defendants have waived any such challenge at trial. (Dkt. No. 173 at 6-8

(citing *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 165 (2010).)

In opposition, defendants clarify that they do not intend to challenge the validity of

plaintiffs' copyright on any of the Works in Suit. Rather, defendants seek only to challenge

plaintiffs' right to an award of statutory damages with respect to a small number of recordings at

issue which pre-date 1972—for which statutory damages may not be permitted under Section

301(c) of the Copyright Act. (Dkt. No. 158 at 9-11.) Defendants claim that they cannot have

waived such arguments, because plaintiffs' entitlement to statutory damages under the Copyright

Act implicates the court's subject matter jurisdiction.

The court reserves judgment on whether defendants have waived such argument, and on whether this subset of the Works in Suit may be the subject of a statutory damages award. The court will seek clarification from the parties on such arguments at trial.

### B. Defendants' Motion *in limine* Regarding Proper Characterization of the Court's Summary Judgment Decision (Dkt. No. 141)

The court denies defendants' motion regarding the appropriate characterization of the Summary Judgment Decision at trial, (Dkt. No. 141), to the extent it requires both sides to refrain from referring to the court's role in adjudicating previous disputes in this litigation. However, neither party shall read any portion of the SJ Decision directly to the jury. The court will summarize the relevant findings of the SJ Decision in instructions to the jury at the beginning of trial, and cautions the parties that references to such findings must track the court's instructions.

### C. Plaintiffs' Motion *in limine* to Preclude Evidence or Argument Concerning Plaintiffs' Alleged Failure to Sue Other Infringers (Dkt. No. 155)

The court grants plaintiffs' motion to preclude evidence or argument concerning plaintiffs' failure to sue other infringers. The jury's task at trial will be to adjudicate the appropriate amount of statutory damages for defendants' employee uploads *in this case*. As both sides well know, parties decide to forgo claims for myriad reasons, including many which have nothing to do with the merits of a claim. Testimony or other evidence suggesting that the absence of suits against third parties not at all involved in this litigation somehow means that plaintiffs failed to properly mitigate damages here would involve a theory the court deems invalid and needlessly speculative. The court will exclude all such evidence or argument.

However, defendants claim that plaintiffs will seek at trial "to place significant blame on Grooveshark for plaintiffs' inability to maximize their revenues generated from their contractual

arrangements with licensed digital music providers and to fully exploit the market for music streaming services." (Dkt. No. 171 at 3.) Should plaintiffs in fact pursue such a line of argument, defendants may seek leave to present rebuttal evidence.

### D. Plaintiffs' Motion *in limine* to Preclude Evidence or Argument Concerning Settlement Negotiations (Dkt. No. 135)

Escape approached a number of plaintiff record companies—including UMG, Warner, and Sony—in attempts to negotiate certain licensing agreements between 2007 and 2009. Such negotiations were meant in part to cover defendants' liability for past infringement, as well as potential future dealings. Plaintiffs claim that, based on this negotiation history, defendants intend to make arguments at trial that: (1) plaintiffs did not in fact consider defendants to be egregious infringers; (2) defendants acted in good faith because they tried to secure licenses from plaintiffs; and (3) plaintiffs failed to mitigate their damages by refusing to grant licenses and then delaying in filing suit against Grooveshark. Plaintiffs argue that such arguments are irrelevant under Rule 401 because "the parties' negotiations only addressed the overall legality of the Grooveshark service and never discussed the employee infringements" at issue. (Dkt. No. 135 at 1; *see also* SJ Decision at 41 ("While plaintiffs and defendants engaged in licensing discussions, during these meetings, plaintiffs never learned that defendants' employees were engaged in uploading copyright protected material onto Grooveshark.".) Alternately, to the extent such evidence might be relevant, plaintiffs argue that it must be excluded as settlement evidence under Rule 408, or as unduly confusing or prejudicial under Rule 403.

Plaintiffs' motion is granted in part. The court will not permit evidence implicating settlement discussions regarding claims against defendants' for *past* infringement, which would fall within the prohibitions of Rule 408. Nor will the court permit evidence of the financial terms of settlement offers or negotiations, which might be used "to prove or disprove the validity or

amount of a disputed claim." Fed. R. Evid. 408.  Defendants, however, inform the court that

they do not plan to present such evidence at trial.  Instead, they seek to offer background

information to the jury regarding defendants' pursuit of future licensing deals with plaintiffs, and

will redact all documents referencing the financial terms of any licensing negotiation.   Presented

in this general fashion, defendants are entitled to put on evidence regarding negotiations between

defendants and plaintiffs for future licensing agreements around the time of the infringements at

issue.  Such evidence goes to defendants' "state of mind" as well as the "conduct and attitude of

the parties"—two of the six *Bryant* factors.  Presented for such purposes, this evidence does not

violate Rule 408.  And, because such evidence relates to these two *Bryant* factors, it is also

relevant under Rule 401.  *See Hart v. RCI Hospitality Holdings, Inc.*, No. 09 CIV. 3043 PAE,

2015 WL 1061501, at *1 (S.D.N.Y. Mar. 11, 2015) ("The standard of relevance established by

the Federal Rules of Evidence is not high.") (internal citations and quotation marks omitted).

    In sum, the court will permit defendants to present evidence at trial concerning the

general factual background—but not the substantive financial terms—of the parties' negotiations

for future licensing.  Such evidence or argument must be tethered to defendants' state of mind or

conduct in infringing the Works in Suit.

### E.  Plaintiffs' Motion *in limine* to Preclude Evidence or Argument Concerning Defendants' "Failure to Mitigate Defense" (Dkt. No. 124)

    For similar reasons—*i.e.*, to present evidence regarding defendants' "state of mind" or

the "conduct and attitude of the parties"—the court will allow defendants to present aspects of

their "failure to mitigate" defense at trial.  Plaintiffs' motion *in limine* to preclude such a defense

is denied in part.

### i.    The Digital Millennium Copyright Act ("DMCA")

    The DMCA gives internet service providers a "safe harbor," under certain circumstances,

from liability "for infringement of copyright by reason of the storage *at the direction of a user*." 17 U.S.C. § 512(c)(1) (emphasis added).  As noted above, the infringements at issue involved the unauthorized uploading of copyrighted recordings, pursuant to the express direction of the defendants, by numerous Escape *employees*—not Grooveshark users.  Because the DMCA applies to user-directed infringement, defendants' compliance (or lack thereof) with the DMCA is not relevant here, and may not be used as part of a "failure to mitigate" defense.  On this point, the parties in fact agree.  Defendants state that they have no intention of raising a defense at trial based on the DMCA, and represent that "they view the DMCA as entirely irrelevant to this case[.]"  (Dkt. No 144 at 4; *see also* Dkt. No. 159 at 5.)  Similarly, plaintiffs state that the DMCA "is completely irrelevant where, as here, Escape itself committed the acts of infringement via its officers and employees."  (Dkt. No. 125 at 5-8; *see also* Dkt. No. 156 at 4.)  Any mitigation argument based on DMCA compliance will be precluded at trial.

ii.     Defendants' "Failure to Mitigate" Defense

Defendants argue that, to the extent plaintiffs' motion *in limine* focuses on defendants' DMCA compliance, it misses the mark, as defendants "do not intend to even make reference to the DMCA during the trial."  (Dkt. No. 159 at 5.)  Rather, in their "failure to mitigate" defense, defendants intend to introduce testimony and documents showing that: (1) defendants engaged plaintiffs in negotiations for licenses; (2) during the time that Escape employees were uploading the Works in Suit, plaintiffs "actively encouraged" Escape to develop Grooveshark and then return to the negotiations; and (3) "Escape reliably processed requests by content owners to take down particular audio files, and plaintiffs did not make any such requests in respect of the Works in Suit."  (Dkt. No. 159 at 1-5.)  Defendants intend to offer such arguments despite failing to include a "failure to mitigate" defense in their initial pleadings.

Plaintiffs seek to preclude these arguments. They argue that defendants' mitigation defense is an attempt to "shift the focus of the trial from the adjudicated issue of employee uploads to the wholly irrelevant issue of *user* infringements." (Dkt. No. 125 at 4-5.) Plaintiffs note that, in rejecting defendants' affirmative procedural defenses, the court ruled at summary judgment that defenses "predicated upon plaintiffs waiting, or delaying, to bring a claim against defendants" must fail, because plaintiffs promptly filed suit three months after learning of these specific employee uploads. (SJ Decision at 42.) Plaintiffs also claim that defendants waived such a defense by not pleading it, and that this defense is also barred as a matter of law in statutory damages cases, because certain courts "have held that because statutory damages are penal in nature, the affirmative defense of mitigation of damages has no application to the imposition of such damages (including those recoverable under the Copyright Act)." (Dkt. No. 125 at 8-13.)

As an initial matter, the court fails to see how defendants' argument that "Escape reliably processed requests by content owners to take down particular audio files and plaintiffs did not make any such requests in respect of the Works in Suit" is anything other than a defense based on DMCA compliance. To the extent this argument is not based on the DMCA or user infringements, but is instead based on the general proposition that plaintiffs "sat back and watched the Works in Suit remain available for streaming" (Dkt. No. 158 at 2)—the argument appears to be an attempt to re-litigate the court's rulings at summary judgment. Defendants made similar arguments, almost *verbatim* at times, during summary judgment briefing in relation to their affirmative defenses. The court rejected those arguments, holding that defenses based on plaintiffs' "waiting, or delaying, to bring a claim against defendants" must fail because plaintiffs did not have knowledge of the employee uploads at issue until 2011. (SJ Decision at 42.)

Defendants have not shown why such failed arguments based on plaintiffs' pre-2011 conduct should be resurrected at trial.  This line of argument is precluded.

However, at this time—subject to Rule 403 objections at trial—the court declines to preclude the entirety of defendants' failure to mitigate defense.  As noted above with reference to plaintiffs' motion *in limine* concerning settlement negotiations, the court will allow defendants' "failure to mitigate" defense to the extent it provides background to the jury about defendants' attempts to secure future licensing or otherwise cooperate with plaintiffs regarding future infringement.  While a close call under the case law, the court finds that these mitigation arguments have not been waived.  *See Travellers Int'l. A.G. v. Trans World Airlines. Inc.*, 41 F.3d 1570, 1581 (2d Cir. 1994) (noting that while failure to mitigate damages is an affirmative defense that may be waived if not pleaded, it is also "arguably an aspect of causation.")  And, because the jury has "broad discretion in determining how to award statutory damages and may consider actual damages as a factor in making that determination, a failure to mitigate damages may remain relevant, particularly because one purpose of statutory damages is to approximate actual damages that are difficult to prove."  *See Malibu Media, LLC v. Tashiro*, No. 13 CIV. 205 (WTL), 2014 WL 5488810, at *2 (S.D. Ind. Oct. 29, 2014) (collecting cases).[1]

## F.  Defendants' Motion *in limine* Regarding Unrelated and Irrelevant Court Decisions (Dkt. No. 143)

Defendants seek to preclude from the evidence at trial the Magistrate Judge's Report and Recommendation—and the related opinion from the District Court—entered in collateral proceedings ("the EMI case") involving Escape.  *See Capitol Records, LLC d/b/a/ EMI Music North America v. Escape Media Group, Inc.*, 12 CIV. 6466.  In the EMI case, a court in this

---

[1] Despite plaintiffs' claims to the contrary, the Second Circuit did not explicitly reject this view in *Psihoyos. See Psyihoyos*, 748 F.3d at 127 (rejecting the view that statutory damages *must* have any correlation to actual damages, but also affirming "the wide discretion" and "various other factors a court may consider" in setting statutory damages).

district rejected Escape's DMCA defenses, and held that Escape was liable for direct infringement in connection with its streaming service. In so holding, the EMI court noted that Grooveshark was a "technological Pez dispenser" of infringing works, and that Escape "purposefully" failed to keep records of infringement.

The EMI case hinges in large part on Escape's DMCA compliance regarding user infringements, which, as noted above, is irrelevant here. Nevertheless, plaintiffs argue that the evidence underlying the EMI decision is highly relevant to certain statutory damages factors here, including defendants' "state of mind," "conduct and attitude," and "deterrence," and note that "[n]umerous courts have held that courts may consider the infringer's overall conduct in establishing its state of mind, conduct and attitude, and the need for deterrence, even if that conduct reaches beyond the infringer's conduct in connection with the specific infringements in suit." (Dkt. No. 163 at 7) (collecting cases).

In the court's view, plaintiffs likely can present sufficient evidence relating to defendants' "state of mind," "conduct and attitude," and the need for deterrence based on the voluminous trial record before the court, without the need to refer to collateral proceedings involving Escape. However, because the court is inclined to permit aspects of defendants' "failure to mitigate" defense concerning their state of mind and conduct, the EMI decision may come in as relevant rebuttal evidence. The court reserves judgment on this issue.

## G. Defendants' Motion *in limine* To Limit Evidence and Argument Concerning Damages to the Works In Suit (Dkt. No. 145)

Defendants' motion *in limine* to limit evidence and argument concerning damages to the Works in Suit is denied. As defendants themselves argue in support of their "failure to mitigate" defense, the court need not prevent the parties "from introducing probative evidence of the historical facts underlying this case or their state of mind and plaintiffs' conduct and attitude,

15

which are centrally relevant factors for consideration by the jury in determining the appropriate amount of statutory damages." (Dkt. No. 159 at 13.) But this cuts both ways. If defendants in fact put on some version of their "failure to mitigate" defense, in an attempt to explain the broader context of defendants' "state of mind" or the "conduct and attitude of the parties" to the jury, then plaintiffs may also present evidence of this context, which reaches beyond the approximately 4,900 recordings in the Works in Suit.

### H. Plaintiffs' Motion *in limine* to Preclude Evidence or Argument Concerning Defendants' Calculation of Actual Damages (Dkt. No. 127)

The court will address the bulk of this motion in a separate opinion and order, or from the bench at trial. For present purposes, the court notes that defendants apparently failed to timely produce to plaintiffs the data underlying certain damage calculations spreadsheets. Such a discovery tactic is particularly troubling here, given the blatant history of spoliation referenced at summary judgment.

Defendants have now agreed to forgo any reliance on two "streaming spreadsheets" containing such data. (Dkt. No. 169 at 15-16.) The court will hold defendants to this representation at trial, and will not admit Exhibits 93 or 94 into evidence.

16

## CONCLUSION

This opinion resolves in part the motions *in limine* filed in this case. The Clerk of Court is respectfully directed to terminate the motions listed as items 121, 124, 127, 135, 141, 143, 145, and 155 on the docket.

As noted above, the court reserves judgment as to certain arguments. Those aspects of any pending motion *in limine* not resolved by this decision will be addressed by the court in a separate opinion or from the bench at trial. The court reserves the right to revisit these rulings and related evidentiary determinations at trial—particularly on Rule 403 grounds—in the context of specific offers of proof.

Trial will commence April 27, 2015 at 10:30 a.m.

SO ORDERED.

Dated:   New York, New York
       April 23, 2015

                                Thomas P. Griesa
                                U.S. District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/23/15